# Edwards, Appellant, v. Meyers.

*Practice—Charge—Character of testimony—Facts not in issue— Inferences contrary to facts—Sales—Real estate—Principal and agent.*

1. When testimony is before the court, it is the court's duty to see that it has at least a natural and reasonable tendency to sustain the allegations in support of which it is introduced, that it is of such a character as to warrant an inference of the fact to be proved, and amounts to something more than a mere basis for conjecture or vague speculation. If there is no sufficient evidence to justify an inference of the disputed fact, the court has the right and it is its duty to withhold it from the jury.

2. In an action to recover on a promissory note where the real issue reduces itself to the question whether the note was given unconditionally for services already rendered in a pending sale of coal lands or only as security for payment if the sale was consummated, it is reversible error for the court to admit a question foreign to the issue by instructing the jury that if the plaintiff had acted as agent for both parties he could not recover, where the only evidence that he had so acted rests upon the naked assertion of the defendant and his version of an alleged remark made by the plaintiff, which remark was expressly denied by the plaintiff, and, even if made, was capable of various other interpretations and only by surmise justified the inference that plaintiff was acting in a dual capacity as agent.

3. It is error to instruct the jury that they can consider the improbability of a man of ordinary intelligence doing a certain thing, where, on the defendant's own testimony, he admittedly was willing to do what the instructions assume a man of ordinary business capacity would not do.

*Practice, C. P.—Evidence—Admissibility of records in other suits— Harmless error.*

4. The admission of the record of another suit, although clearly unnecessary because the fact intended to be proved by it was not contradicted, is not ground for reversal where its admission could have done no harm to the party complaining.

Argued Feb. 15, 1910. Appeal, No. 295, January T., 1909, by plaintiff, from judgment of C. P. Schuylkill Co., Sept. T., 1907, No. 86, on verdict for defendant in case of Thomas R. Edwards v. Henry Meyers. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit on a promissory note.  Before Shay, P. J.

The facts appear in the opinion of the Supreme Court.

At the trial defendant presented the following points:

1. If the jury find that Edwards, the plaintiff, was acting as the agent for the Catawissa Coal Company, as well as for Meyers, and that he did not disclose this fact to Meyers until after the agreement of February 22, 1906, was executed at Williamsport, the verdict must be for the defendant, Meyers. *Answer:* We affirm this point, and call your attention to the case of Marshall v. Reed, 32 Pa. Superior Ct. 60, where it says: "Where one acts in a dual capacity as agent, or servant, for two separate employers, nothing less than clear proof of consent of both employers, not merely to double service, but to double compensation, will suffice to validate an expense contract with the second employer." That is, where a man acts for both parties he must have the consent of both parties to his acting for them, and to his compensation from both parties, before he can recover; the case arises on the principle laid down in Scripture, that no man can serve two masters; and it is against public policy to permit a man to serve in the two capacities unless it is expressly agreed between the parties themselves.  To the same effect is another case, Evans v. Rockett, 32 Pa. Superior Ct. 365; the case in the Supreme Court of the state, Wilkinson v. McCullough, 196 Pa. 205, bears out the same idea. [1]

2. That the jury has the right to consider, in arriving at a verdict in this case and in reconciling the conflict of testimony between the plaintiff and the defendant, the improbability that any person of ordinary business intelligence would agree to pay $5,000 to his agent, for the purchase of a $115,000 tract of land before he had seen or examined the land, or had the title to it examined, or had met the owners, or had made a contract with the owners for its purchase; and regardless of whether the owners had agreed to the terms proposed, or, if they had agreed, whether they were able to comply with them or not.  *Answer:* If you find that it is impossible, then we say that the jury has a right to consider it in arriving at the verdict.  That is a question, of course, for the jury. [2]

**3.** That the general rule is that a broker or agent who is compensated by the payment of a commission for his services in the purchase of lands undertakes to furnish a vendor or seller and is bound to act in good faith in presenting a person as such; and when one is presented, the principal is not bound to accept him or to pay commissions—unless the person presented is ready and able to perform the contract on his part according to the terms proposed. *Answer:* In answer to that point we will read what we previously read to you: "It is always incumbent upon a broker seeking to recover a commission, to prove further that a sale was made to the party whom he procured as a purchaser, or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer." That, we say, is the general rule, but it may be varied by a contract between the parties themselves, as we have explained to you in our general charge. [3]

**5.** The judgment of the Supreme Court of Pennsylvania, in the case of Henry Meyers v. The Catawissa Coal Company, 219 Pa. 1, is conclusive upon Edwards, the plaintiff in this case, that he did not furnish to Meyers a vendor or seller able to carry out the contract entered into at Williamsport on February 22, 1906. *Answer:* We will say to you that the case shows that the sale was not consummated, by reason of a defect in the title, and we refer to our general charge as to what we said about the contract between these parties and what they believed was the contract. [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–4) above instructions, and (6) the admission in evidence of the record of the suit of Meyers v. Catawissa Coal Company.

*John F. Whalen,* for appellant.

*C. E. Berger,* for appellee.

Opinion by Mr. Justice Stewart, March 28, 1910:

This was an action on a promissory note for $4,000, drawn

by defendant and payable "on demand and after date" to the order of the plaintiff, dated February 13, 1906. The defense set up was that plaintiff had been employed by defendant to act for him and others associated with him, in the purchase of a certain tract of coal land from the Catawissa Coal Company; that it was understood and agreed that plaintiff was to receive as compensation for his services the sum of $5,000 if the negotiations resulted in a purchase, upon the completion of the purchase; that plaintiff demanded some security that his compensation would be paid him upon completion of the purchase, and that a note of defendant for $5,000 was accordingly given him of like tenor and effect as that sued on, with the understanding that it was given as security merely, and that defendant was not to be called to pay it except in case his associates declined to pay plaintiff for his services on completion of the sale; that subsequently plaintiff represented that he had concluded an agreement with the coal company for the purchase of the land at the price of $115,000; that defendant thereupon paid over to plaintiff $1,000 to be paid to the coal company to bind the bargain, and that thereupon plaintiff surrendered the $5,000 note and accepted in substitution therefor the $4,000 note in suit; that notwithstanding the defendant subsequently entered into a written agreement with the coal company for the purchase of the land at the price named, the transaction was never completed and the purchase wholly failed through default on the part of the coal company. The plaintiff on the other hand contended that the note was given him unconditionally; that it was given and accepted as an immediate payment for services he had rendered, and was, as expressed by its terms, an absolute promise to pay. The case presented a single question of fact, and that a very simple one. But another issue, not suggested by the pleadings and foreign to the case, was introduced on the trial, and submitted to the jury as a question of fact which, if found adversely to the plaintiff, would prevent recovery by him even though the note were established as an absolute obligation. The plaintiff had testified in answer to questions put by defendant's

counsel, that in the negotiation for the purchase of the land, he had represented no one but the defendant; that he had had no understanding or agreement with the coal company that he was to receive anything from the company or anyone representing it. The evidence that was thought sufficient to raise an issue of fact as to this matter is to be found exclusively in the testimony of the defendant himself. This witness was permitted to say that, "He rather thought' that plaintiff was accepting pay from Chrisman," the president of the coal company. When asked upon what he based this suspicion, for it was nothing more, his answer was: "On the return trip on our last visit to Williamsport he [plaintiff] told me that they [the coal company] disappointed him, that he did not get anything from them for his work so far." Resting upon this conversation, which was explicitly denied by plaintiff, and this alone, for there is not a suggestion in the case outside of it that plaintiff was to receive anything from the coal company, the learned trial judge instructed the jury as follows, adopting a point submitted on behalf of the plaintiff: "If the jury find that Edwards, the plaintiff, was acting as agent for the Catawissa Coal Company, as well as for Meyers, and that he did not disclose this to Meyers until after the agreement of February 22, 1906, was executed at Williamsport, the verdict must be for the defendant, Meyers." Unless this evidence, standing alone, as it certainly does, would justify an inference of the disputed fact the question should not have been submitted. The conversation did not explain itself. To conclude that the reference was the work plaintiff had done in negotiating a sale of the coal land, would be nothing better than surmise. Plaintiff, as an experienced mine inspector, before he was brought into relations with the defendant, had made an examination of the property for the president of the coal company, had furnished him with an estimate of the quantity of coal it contained, and for this had received no compensation. In face of this uncontradicted testimony, adduced by defendant on cross-examination of the witness, could a jury be justified in finding that the reference here was to the work plaintiff had done in reference

to the sale to the defendant?   Nor is it such an admission as would establish an agency with respect to the sale of the land. To give it such meaning, an agreement that the coal company was to pay the plaintiff for his services would have to be implied solely from the expression attributed to plaintiff that he was disappointed in not having received anything.   At most the expression implies an expectation on his part that he would receive something by way of appreciation, without any obligation on the part of the company to bestow it. "When the testimony is before the court, it is their duty to see that it has at least a natural and reasonable tendency to sustain the allegations in support of which it is introduced, that it is of such a character as to warrant an inference of the fact to be proved, and amounts to something more than a mere basis for conjecture or vague speculation.   If there is no sufficient evidence to justify an inference of the disputed fact, the court has the right and it is its duty to withhold it from the jury:" Battles v. Laudenslager, 84 Pa. 446.   As supplementary to and sustaining other evidence pointing to a double employment of the plaintiff, had there been such, the alleged conversation would have had significance; but standing alone, it afforded no sufficient basis for inference as to the disputed fact.   The effect of the submission was to raise an issue not in the case.   The ruling of the court with respect to it is the subject of the first assignment of error, and this assignment is sustained.

The defendant asked for the following instruction: "The jury has the right to consider, in arriving at a verdict in this case, and in reconciling the conflict of testimony between the plaintiff and the defendant, the improbability that any person of ordinary business intelligence would agree to pay $5,000 to his agent, for the purchase of a $115,000 tract of land before he had seen or examined the land, or had the title to it examined, or had met the owners, or had made a contract with the owners for its purchase; and regardless of whether the owners had agreed to the terms proposed, or, if they had agreed, whether they were able to comply with them or not." The affirmance of this point is next assigned as error.   There was ab-

solutely nothing in the evidence to warrant such instruction as was here given. Speaking of a time subsequent to the giving of the $5,000 note, when asked about the payment of the $5,000, defendant testified that he and the plaintiff had been together all day and had reached a complete understanding in regard to the purchase of the property. These questions and answers followed: "Q. At that time, then, you were satisfied to purchase this property, were you not? A. Yes. Q. You had not seen the property, had you? A. No, sir. Q. Did you know where it was? A. No, sir. All I had was his word. Q. What word? A. Mr. Edwards's word of honor that it contained so much coal and that was to be the price. Q. Did you ever investigate to find whether it did contain that much coal? A. No, sir. Q. You have no evidence to give here then that Mr. Edwards's representation to you was not correct? A. No, I have not. Q. So that you were satisfied to purchase this piece of coal land upon the representation that Mr. Edwards made to you as to the contents of the land in coal. A. Yes, and the titles being clear." The instructions assume that defendant was a man of at least ordinary business capacity. He admittedly was willing to do what the instructions assume a man of ordinary business capacity would not do—purchase a property for $115,000 he had never seen, solely upon the representations of another as to its value. He paid $1,000, as he said, to bind the bargain under just such conditions. Ten days thereafter, when he had been on the property but once and was then prevented by the eight or ten feet of snow upon it from examining it, or learning anything from observation of its value, he entered into a written article for its purchase and paid $5,000 on the purchase money. In the face of such testimony as this from the defendant himself, the instruction asked for should have been refused.

The defense was that the note in suit was to be paid only in case the purchase of the land was completed; that it never was so completed, and that failure resulted through no fault of the defendant. The defendant testified that he had refused to complete the purchase because the title to the land was unsatisfactory. No attempt was made to contradict this testi-

mony or assert anything to the contrary. The record of a suit brought by the plaintiff against the coal company to recover back purchase money paid on the articles of agreement was offered in evidence. Whatever the purpose in offering this record was, it' was admitted only as evidence of the fact that the purchase had never been completed, and that defendant had rejected the title because unsatisfactory to him; the agreement having provided that the vendor was to make title satisfactory to the vendee. We cannot say that the evidence was inadmissible for the one purpose indicated by the court. Clearly it was unnecessary, as the fact intended to be proved by it was not contradicted, and it could have been rejected on this ground. Its admission, however, for the one limited purpose could have done the plaintiff no harm. The assignment of error which complains of the admission of this evidence is overruled.

For the reasons stated, the judgment is reversed and a venire facias de novo awarded.